**Dismissed and Opinion filed March 24, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00629-CV

**THE VILLAGE OF TIKI ISLAND, Appellant**

**V.**

**PREMIER TIERRA HOLDINGS, INC., Appellee**

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 14-CV-0410**

## O P I N I O N

In this accelerated interlocutory appeal, a city appeals the denial of its plea to the jurisdiction filed in response to a developer's declaratory judgment action for a determination of the developer's vested rights in a proposed development project. Because no justiciable controversy exists, we dismiss the case for want of jurisdiction.

## FACTUAL BACKGROUND

Premier Tierra Holdings, Inc., owns a tract of property in the Village of Tiki Island (the City), located in Galveston County. Premier desires to develop or sell the property for a mixed-use marina development (the project). In 2014, Premier filed a declaratory judgment action against the City seeking a determination of its vested rights under chapter 245 of the Texas Local Government Code. Premier asserted that chapter 245 required the City to consider the approval of an application for a permit solely on the basis of the regulatory scheme existing at the time the first plat application for a project is filed, and therefore certain provisions of the City's zoning ordinance could not be applied to its project because Premier filed its plat application before the City approved the ordinance.

In its pleadings, Premier alleged that in 2009, the City's board of aldermen began discussing the adoption of a zoning ordinance with the intention of thwarting Premier's development plan. Because the proposed ordinance included provisions that would prohibit aspects of Premier's project, Premier tried to negotiate with the City regarding the ordinance's terms, but no agreement could be reached. Later that year, Dale Wentzel, a marina developer, negotiated to acquire the property for a new mixed-use marina development consistent with Premier's development plan. To facilitate Wentzel's development, Premier again negotiated with the City regarding the terms of the proposed ordinance, but was unsuccessful.

On April 22, 2010, Premier filed with the City a plat application for the property. The plat described the type and scope of Premier's anticipated project, summarized as "a mixed use marina[-]focused project with up to 150 residential units, 400 dry stack boat slips, 150 wet boat slips and related piers, parking and related support facilities such as hotel, restaurant, club, ship store, general retail/office, fuel station, storage, parking, and recreational area."

On April 27, 2010, Premier and Wentzel attended a public zoning hearing concerning the ordinance the City was considering. At the hearing, Premier and Wentzel presented the project and also proposed changes to the ordinance to facilitate the project. The City rejected the proposed changes and approved the zoning ordinance that same day. As approved, the new zoning ordinance would prohibit certain features of the project. About three weeks later, on May 18, 2010, the City rejected Premier's previously filed plat application.

According to Premier, after the new zoning ordinance passed, the City refused to recognize Premier's vested rights in the project and asserted that Premier was subject to all of the ordinance's provisions. Without waiving its vested rights, Premier sought approval of its project under the ordinance, leading to extended negotiations in an attempt to reach an amicable resolution and avoid litigation. At Premier's request, in August 2010, the City revised the ordinance to provide for approval of a "Planned Unit District" (PUD) to accommodate certain aspects of the project.

The City suggested that Premier apply for a PUD and, to reach a resolution, Premier negotiated with the City regarding the terms of a proposed PUD to allow a reduced scale version of the project. On April 18, 2011, the City held a preliminary public hearing to review the plan and gain public input. Premier received "negative feedback" on the plan. On April 28, Premier formally filed its application for the PUD, reserving its vested rights. The City held a second public hearing at which Premier again received negative feedback on the plan. Additionally, the newly elected mayor, who opposed Premier's PUD, informed Premier that he intended to seek further reductions to the scale of the project.

In July 2011, Premier sent the city attorney a letter inquiring whether the City would be willing to meet and attempt to resolve the parties' dispute prior to

litigation. Attached to the letter was a draft of Premier's declaratory judgment petition. According to Premier, the City again denied Premier's vested rights, but agreed to meet and re-open negotiations for approval of the PUD. To avoid litigation, Premier continued to pursue a reduced scale version of the project. Eventually, however, it became clear to Premier that even a reduced scale version would not be approved. Premier made a final request that the City acknowledge its vested rights, but the City provided no official response.

In its lawsuit, Premier sought declarations that its rights in the project vested on April 22, 2010, and that certain provisions of the zoning ordinance would not apply to the project. Specifically, Premier sought the following declarations:

> (1) the project is vested under Chapter 245 as of April 22, 2010;
>
> (2) the project is vested as described in the plat, specifically including, but not limited to Plat Notes 9–13;
>
> (3) any provisions of the zoning ordinance which inhibit the project through property classification do not apply to the project, including but not limited to (a) permitted or prohibited uses and (b) requirement for PUD approval;
>
> (4) any provisions of the zoning ordinance which inhibit the project by impacting building size do not apply to the project, including but not limited to (a) height limit, (b) setback, and (c) parking; and
>
> (5) any provisions of the zoning ordinance which inhibit the project related to (a) landscaping or tree preservation, (b) open space or park dedication, (c) lot size, (d) lot dimensions, and (e) lot coverage, do not apply to the project.

Premier did not, however, seek any relief regarding the City's denial of its plat application. Instead, Premier asserted that the approval or denial of its subdivision plat was "irrelevant to Premier's vested rights."

The City filed an answer and a plea to the jurisdiction in which the City asserted that the trial court lacked subject matter jurisdiction over Premier's claims

4

because, under the facts alleged in the petition, there was no justiciable controversy between the City and Premier. According to the City, the relief Premier sought was "a ruling on a hypothetical future application of land-use regulations." Both parties briefed the issue and filed supporting evidence. After an oral hearing, the trial court signed an order on July 23, 2014, denying the City's jurisdictional plea.

## ANALYSIS OF THE CITY'S ISSUE

In one issue, the City contends that the trial court erred in denying the City's plea to the jurisdiction because, under the undisputed jurisdictional facts, there is no justiciable controversy. The City argues that the claims seek resolution of an issue that is moot or, alternatively, the claims are not ripe for judicial review.

### Standard of Review

Subject matter jurisdiction is essential to the authority of a court to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). The issue of whether a court has jurisdiction is a matter of law that is reviewed de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

"In reviewing a grant or denial of a plea to the jurisdiction, we determine whether the plaintiff's pleadings, construed in favor of the plaintiff, allege sufficient facts affirmatively demonstrating the court's jurisdiction to hear the case." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012). Evidence relevant to the jurisdictional issue can be introduced and considered at the plea to the jurisdiction stage if needed to determine jurisdiction. *A.P.I. Pipe & Supply*, 397 S.W.3d at 166; *Miranda*, 133 S.W.3d at 227.

The burden is on the plaintiff to affirmatively demonstrate the trial court's

5

jurisdiction. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). The plea to the jurisdiction must be granted if the plaintiff's pleadings affirmatively negate the existence of jurisdiction. *Id.* Likewise, the plea must be granted if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Id*.

Subject matter jurisdiction requires that the party bringing the suit have standing, that there is a live controversy between the parties, and that the case be justiciable. *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Justiciability doctrines such as ripeness and mootness are rooted in the prohibition against advisory opinions, which in turn is rooted in the separation of powers doctrine. *See Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998); *City of Helotes v. Miller*, 243 S.W.3d 704, 708 (Tex. App.—San Antonio 2007, no pet.). "For a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief sought." *See Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 681 (Tex. App.—Austin 2004, no pet.) (citing *Gomez*, 891 S.W.2d at 245).

Under the Uniform Declaratory Judgments Act, a person whose rights, status, or other legal relations are affected by a statute or municipal ordinance may have determined any question of construction or validity arising under the statute or ordinance and "obtain a declaration of rights, status, or other legal relations thereunder." *See* Tex. Civ. Prac. & Rem. Code § 37.004(a). But the Act gives the court no power to pass upon hypothetical or contingent situations, or to determine questions not then essential to the decision of an actual controversy, even though such questions may in the future require adjudication. *Riner v. City of Hunters Creek*, 403 S.W.3d 919, 922 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Thus, a declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the declaration will resolve the controversy. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163–64 (Tex. 2004).

### *The Trial Court Lacked Jurisdiction over Premier's Claims*

Chapter 245 of the Texas Local Government Code creates a system by which property developers can rely on a municipality's land use regulations in effect at the time the original application for a permit is filed. *See Save Our Springs Alliance*, 149 S.W.3d at 681.[1] Under chapter 245, a "permit" is defined to include a "form of authorization required by law, rule, regulation, order, or ordinance that a person must obtain to perform an action or initiate, continue, or complete a project for which the permit is sought." *See* Tex. Loc. Gov't Code § 245.001(1). In turn, a "project" means "an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor." *Id.* § 245.001(3).

Chapter 245 expressly authorizes enforcement of its provisions through a request for declaratory relief. *See* Tex. Loc. Gov't Code § 245.006(a). Further, a municipality's immunity from suit is waived in regard to an action under chapter 245. *See id.* § 245.006(b).

Premier sought declaratory relief to construe its rights under Local Government Code section 245.002. This section establishes a general rule that municipal regulatory agencies must consider a permit application under the terms

---

[1] A municipality is a "political subdivision" for purposes of chapter 245. *See* Tex. Loc. Gov't Code § 245.001(2). Further, chapter 245 defines a "regulatory agency" as "the governing body of, or a bureau, department, division, board, commission, or other agency of, a political subdivision acting in its capacity of processing, approving, or issuing a permit." *Id.* § 245.001(4). It is undisputed that the City is a municipality that also functions as the regulatory agency for purposes of processing, approving, or issuing a permit.

of the ordinances, rules, and other applicable regulations that are in effect at the time a permit, development plan, or plat application is filed:

> Each regulatory agency shall consider the approval, disapproval or conditional approval of an application for a permit *solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time* (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or (2) *a plan for development of real property or plat application is filed* with a regulatory agency.

Tex. Loc. Gov't Code § 245.002(a) (emphasis added). The rights to which a permit applicant is entitled accrue "on the filing of an original application or plan for development or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought." *Id.* § 245.002(a–1). These statutory rights are commonly referred to as "vested rights." *See City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 601 (Tex. App.—San Antonio 2013, pet. denied). Vested rights attach to a project, not to a particular property owner. *Id.*

In effect, chapter 245 "freezes" the rules at the time the original application for a permit is filed, and limits the rights of a city to "change the rules in the middle of the game." *See Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247, 249–50 (Tex. App.—Austin 2011, pet. denied). However, chapter 245 contains a number of exemptions from its operation, including certain municipal zoning regulations and other specified land use regulations. *See* Tex. Loc. Gov't Code § 245.004. A city also may require compliance with technical requirements relating to the form and content of a permit application in effect at the time the application was filed, even though the application is filed after the date an applicant's rights accrue. *See id.* § 245.002(f).

The City does not dispute Premier's assertion that its 2010 plat application triggered the application of chapter 245 to the project described in the plat, at least to the extent the application gave "fair notice of the project" to the City. Moreover, the parties appear to agree that most, if not all, of the contested zoning regulations at issue are not exempt from chapter 245's operation. It is also undisputed that, at the time Premier filed its plat application, the City had no zoning ordinances.

However, at the time Premier filed its plat application, the City was governed by chapter 212 of the Local Government Code, which establishes the standards for approval of a proposed subdivision plat in the city in which the property is located:

> (a) The municipal authority responsible for approving plats shall approve a plat if:
>
> (1) it conforms to the general plan of the municipality and its current and future streets, alleys, parks, playgrounds, and public utility facilities;
>
> (2) it conforms to the general plan for the extension of the municipality and its roads, streets, and public highways within the municipality and in its extraterritorial jurisdiction, taking into account access to and extension of sewer and water mains and the instrumentalities of public utilities;
>
> (3) a bond required under Section 212.0106, if applicable, is filed with the municipality; and
>
> (4) it conforms to any rules adopted under Section 212.002.

Tex. Loc. Gov't Code § 212.010(a). The municipal authority responsible for approving plats must approve a plat that is required to be prepared under this subchapter and that satisfies all applicable regulations. *Id*. §212.005.

The City contends that Premier's plat application was denied on the basis of the land use regulations in effect at the time, including those of chapter 212. And, after the plat application was denied, Premier never exercised its statutory right to

9

request that the City provide the reasons for the denial. *See id.* § 212.009(e) ("On request of an owner of an affected tract, the authority shall certify the reasons for the action taken on an application."). The City also points out that Premier has never appealed the denial of its plat application, and does not challenge the City's denial in this lawsuit. Because the project cannot go forward, the City argues, any request for declaratory relief is moot. Additionally, the City urges that to the extent Premier seeks a declaration of what its rights would be if it were to submit a new plat or permit application in the future, any claims based on that hypothetical scenario are not ripe for judicial review.

Premier responds that its request for declaratory relief is not moot because its allegations and evidence affirmatively demonstrate that the City will not consider any further plans or permits unless they are in the form of a PUD, a process that did not exist until after Premier's rights in the project vested. Premier also argues that the City's denial of its plat application is irrelevant to the dispute because the project described by its plat conformed to the City's regulatory scheme as of April 22, 2010, and Premier's rights in the project vested when the plat application was filed. *See id.* §§ 245.002(a)(2), 245.004(2). Further, because chapter 245 applies broadly to projects, rather than to individual plats or permits, Premier contends that the denial of its 2010 plat application in no way precludes Premier from filing additional plats or requests for permits based on the project described in that plat.

Premier similarly maintains that the dispute is ripe because its vested rights in the project are at issue, and not future permits. According to Premier, the only relevant inquiry is whether its rights in the project have vested and the City should be barred from its continued attempts to force Premier to comply with later-enacted zoning regulations which are not exempt from vesting under chapter 245.

10

Premier argues that a real controversy exists because a decision concerning the existence of vested rights in the project will be important to either Premier's or a later assignee's efforts to proceed with the project. *See City of Helotes*, 243 S.W.3d at 707–10 (holding a justiciable controversy existed when record reflected fact issue concerning whether project for retail development remained the same as that contemplated when original application was filed after anchor tenant subsequently withdrew).

On this record, we agree with the City that Premier has failed to present a justiciable controversy, but we disagree that Premier's claims fail on two separate and distinct grounds of mootness (because Premier has not appealed the denial of its 2010 plat application) and ripeness (to the extent Premier seeks declarations concerning any future plat or permit applications).[2] Instead, viewing the totality of Premier's allegations and evidence in its favor, we conclude that Premier's request for declaratory relief fails to present a justiciable controversy because the record does not disclose the reasons why the City denied the 2010 plat application; Premier has never requested that the City certify the reasons for the denial; no plat or permit applications have since been denied for any specified reasons; and Premier has not challenged the City's denial of its plat application in this or any other proceeding.[3] Consequently, any injury Premier has allegedly suffered, or may

_____

[2] Therefore, our opinion should not be read to hold or imply that the plat application itself or any statutory rights Premier acquired for the project as a result of filing the plat application are necessarily mooted, because Premier filed its plat application and the City has conceded that chapter 245 applies to the project, at least to the extent it gives "fair notice of the project" to the City. Nor do we hold that Premier would be barred from filing additional plat or permit applications for the project.

[3] Although it is undisputed that the City does not provide for an administrative appeal of the denial of its plat, Premier has never sought a mandamus to require the City to approve the plat, and in its live petition Premier expressly denies that it is seeking a mandamus from the trial court for that purpose. Premier seeks only a declaration that it has vested rights in its project that are not subject to the non-exempt provisions of the zoning ordinance.

suffer in the future, as a result of the City's refusal to approve its project is not ripe because Premier has failed to allege or demonstrate that any official action by the City has caused its alleged injuries. *See Riner*, 403 S.W.3d at 922–24 (holding landowners' request for declaratory relief based on contention that city's planning and zoning commission misconstrued lot-size ordinance when it denied landowners' application to replat property was not ripe when landowners did not reapply after remedying the commission's stated reasons for its disapproval of their plat, request a variance, or file an administrative appeal); *see also Robinson v. Parker*, 353 S.W.3d 753, 755–56 (Tex. 2011) (holding that requested declaration that a voter-approved initiative was valid and enforceable was not ripe when plaintiffs had no concrete injury because the record was silent concerning whether the city had failed to comply with the initiative or would soon fail to comply with it).

Chapter 245 defines a "project" as an endeavor over which a regulatory agency exerts its jurisdiction "and for which one or more permits *are required to initiate, continue, or complete the endeavor*." Tex. Loc. Gov't Code § 245.001(3) (emphasis added). Likewise, a "permit" is defined as a form of authorization "that a person must obtain to perform an action *or initiate, continue, or complete a project* for which the permit is sought." *Id.* § 245.001(1) (emphasis added). The statutory language reflects a legislative intent that a project, and its associated permits, must be approved before they may be initiated, completed, or continued. *See id.* § 245.001(1), (3); *see also id.* § 245.002(b) (providing in part that "[p]reliminary plans and related subdivision plats, site plans, and all other development permits for land covered by the preliminary plans or subdivision plats are considered collectively to be one series of permits for a project"). Despite chapter 245's plain language, however, Premier dismisses the denial of its plat as

irrelevant and contends that its rights automatically vested on April 22, 2010, when Premier filed the plat application describing the project. *See id.* § 245.002(a). Further, Premier alleges that the City's subsequent efforts to impose aspects of the subsequently enacted zoning ordinance to its project demonstrate the existence of a live controversy.

But the City was not required to approve Premier's plat application merely because it was filed; rather, it was entitled to approve, disapprove, or conditionally approve the application so long as the City did so "solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect" at the time the plat application was filed. *Id.*; *see also* Tex. Loc. Gov't Code § 212.005 (providing that the municipal authority responsible for approving plats must approve a plat "that is required to be prepared under this subchapter *and that satisfies all applicable regulations*") (emphasis added). For example, Premier's plat application may have been denied because it failed to conform to the City's "general plan . . . and its current and future streets, alleys, parks, playgrounds, and public utility facilities," *see id.* § 212.010(a)(1), or some other applicable standards or technical requirements.

Because Premier's plat application was denied, the project described in the 2010 plat, and any subsequently filed permits based on that plat, cannot be initiated, continued, or completed until a determination is made concerning whether the City denied the 2010 plat application based on the subsequently enacted zoning ordinance in violation of chapter 245, or whether the City denied the plat application based on one or more legitimate reasons. At that point, Premier could initiate the applicable enforcement mechanisms to challenge the City's actions. *See* Tex. Loc. Gov't Code §§ 245.002, 245.006. But, Premier's failure to request the City to certify the reasons for its denial of the 2010 plat application, its

failure to seek any further plat or permit applications that could have been challenged if denied, and its calculated refusal to challenge the denial of the 2010 plat application as "irrelevant" effectively precludes the trial court from considering and determining the basis for the City's disapproval of Premier's plat application.

Based on the unique posture of this case, the trial court could do no more than confirm—as state law provides and the City has conceded—that Premier's 2010 plat application invoked chapter 245 for the purpose of providing fair notice of its project to the City before it was denied. Premier may have vested rights in the project, but there is no context within which to declare what they are. Any such declaration would be a prohibited advisory opinion that would not resolve the parties' dispute. *See Heckman*, 369 S.W.3d at 147 (stating that justiciability doctrine of ripeness derives from constitutional prohibition on advisory opinions); *Tex. Ass'n of Bus.*, 852 S.W.2d at 444 ("The distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties."); *Save Our Springs Alliance*, 149 S.W.3d at 683 ("A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass.").[4]

We therefore sustain the City's plea to the jurisdiction, and render judgment dismissing Premier's case without prejudice. *See id.* at 685 ("Because a finding that a claim is not ripe results in dismissal without prejudice, the judgment here does not prevent appellants from litigating the merits of their claims in the

---

[4] Premier cites two cases for the proposition that a plat or permit application need not be granted or denied before a court can determine the parties' zoning rights. *See City of Helotes*, 243 S.W.3d at 708; *City of Glenn Heights v. Sheffield Dev. Co.*, 55 S.W.3d 158, 166 (Tex. App.—Dallas 2001, pet. denied). But these cases are distinguishable because neither involved the formal denial of an application and a subsequent refusal to challenge the basis for the denial through available administrative or judicial means.

14

future.”).

**CONCLUSION**

We render judgment dismissing Premier's case without prejudice.


/s/     Ken Wise
        Justice

Panel consists of Justices Christopher, Donovan, and Wise.