# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
**NO. 03-03-00312-CV**
---

**Save Our Springs Alliance and The Circle C Neighborhood Association, Appellants**

**v.**

**The City of Austin; Circle C Land Corporation; and Stratus Properties, Inc., Appellees**

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN202018, HONORABLE PAUL DAVIS, JUDGE PRESIDING**
---

## O P I N I O N

The Save Our Springs Alliance, a non-profit, public-interest organization, and the Circle C Neighborhood Association brought suit in district court in Travis County to prevent development in the Barton Springs Zone in Austin, alleging that the City of Austin was granting development permits in violation of a city ordinance. The City of Austin, the Circle C Land Corporation, and Stratus Properties filed a plea to the jurisdiction, which the district court granted. The Save Our Springs Alliance and the Circle C Neighborhood Association then brought this appeal, narrowly focusing on the proper application of the doctrines of mootness and ripeness and seeking,

in the alternative, an opportunity to amend its petition. For the reasons stated below, we affirm the judgment of the district court.

**BACKGROUND**

The issues in this case come to us from a grant of a plea to the jurisdiction concerning the applicability of the City of Austin's Save Our Springs Ordinance (the "Ordinance") to various parcels of real property. The history of the Ordinance and disputes over its application are complex and lengthy. As well, the ordinance and statutes at issue in this case were amended at different points in the course of litigation, and the pleadings were amended twice. Thus, we begin with a comprehensive introduction to the parties and a review of the events that led to this appeal to provide the context from which these issues arose.

Circle C Land Corporation, a subsidiary of Stratus Properties, Inc. ("Stratus"), owns approximately 1200 acres of land divided into seventeen parcels within the geographic area containing watersheds that contribute to Barton Springs—Barton Creek, Barton Springs, and the Barton Springs Edwards Aquifer ("Barton Springs watershed"). These parcels are part of a master-planned, mixed-use development known as "Circle C Ranch." Development of Circle C Ranch began in the early 1980s as a unified development project. The master plan included a land-use plan, a utility plan for the provision of water, wastewater, drainage and other utilities, a roadway and transportation plan, and a plan for schools, parks, and amenities.

In the early 1990s, a group of Austin citizens, frustrated by their perception that the Austin City Council was failing to adequately safeguard Barton Springs and the Barton Springs watershed, initiated the Ordinance and placed it on the Austin municipal ballot for a local

referendum election. *See Quick v. City of Austin*, 7 S.W.3d 109, 112 (Tex. 1998). After overwhelming approval of the Ordinance by Austin voters in August 1992, the Austin City Council enacted the Ordinance and incorporated it into the City Code. *Id.*

The "Declaration of Intent" states that the Ordinance seeks to insure water-quality control in the Barton Creek watershed. Thus, its provisions do not apply city-wide. The Ordinance contains the following provisions pertinent to this appeal: (1) it limits the percentage of a land tract devoted to "impervious," i.e., non-porous cover; (2) it requires that new developments be set back from streams and not contribute to an increase in the amount of pollution constituents commonly found in urban rainfall runoff water; (3) it prohibits construction in the "critical water quality zone" of the Barton Springs watershed; and (4) it provides for no waivers or exceptions except in limited circumstances necessary to avoid conflicting with state and federal laws. The Ordinance provides that it may only be amended by an affirmative vote of no fewer than six of the seven members of the Austin City Council.

In 1999, the legislature considered the problem that arises when a party has applied for a development permit under one set of land-use regulations when those regulations have changed after an application has been filed. It declared that in those situations regulatory agencies should consider development applications based, in part, on the ordinances "in effect at the time the original application for the permit is filed." Tex. Loc. Gov't Code Ann. § 245.002(a) (West Supp. 2004). It also decided that "[p]reliminary plans and related subdivision plats, site plans, and all other development permits for land covered by the preliminary plans or subdivision plats are considered

3

collectively to be one series of permits for a project." *Id*. § 245.002(b).[1]  At the same time, the

legislature provided that the grandfather clause "does not apply to regulations to prevent imminent

destruction of property or injury to persons, including regulations effective only within a flood plain

established by a federal flood-control program and enacted to prevent the flooding of buildings

intended for public occupancy."  Former section 245.004(9).[2]

On June 24, 2002, appellants Save Our Springs Alliance[3] and the Circle C

Neighborhood Association[4] filed suit in district court.  Basing their pleadings on chapter 245 of the

local government code, they claimed that the City was "approving projects that fail to comply with"

the Ordinance.  In particular, they argued that the terms of former section 245.004(9) exempted

Circle C Ranch from the grandfather clause, and so the City ought to apply the regulations found in

the Ordinance to development applications for plats within Circle C Ranch rather than pre-Ordinance

---

[1]  We will refer to sections 245.002(a) and 245.002(b) collectively as "the grandfather clause" because they "grandfather" plats from local land-use regulations enacted after an original application for development for that plat was filed.

[2]  Act of April 29, 1999, 76th Leg., R.S., ch. 73, § 2, sec. 245.004(9), 1999 Tex. Gen. Laws 431, 432, *amended by* Act of May 26, 2003, 78th Leg., R.S., ch. 646, § 1, 2003 Tex. Gen. Laws 2050, 2050 (former section 245.004(9)).  As we discuss in our opinion, former section 245.004(9) existed in this form when the Save Our Springs Alliance filed this suit.  It was amended after the court entered its final judgment granting the City's plea to the jurisdiction.

[3]  Save Our Springs Alliance (SOS), formerly the Save Our Springs Legal Defense Fund, is a non-profit, public-interest organization of approximately 2000 members.  According to its pleadings, its mission is "the protection and enjoyment of Barton Springs, the Barton Springs Edwards Aquifer, the Barton Springs watershed and the Barton Springs Ecosystem."  Under its former name, SOS was formed to organize a petition drive to put the Ordinance on the city ballot.

[4]  The Circle C Neighborhood Association is an unincorporated voluntary association of homeowners within Circle C Ranch. Neighborhood Association members are successors-in-interest to the original Circle C Ranch landowners.

regulations. As a result, they sought mandamus and injunctive relief to bar the City from granting development permits for property in Circle C Ranch.[5]

At that time, Stratus and the City were in the midst of negotiations regarding the application of the Ordinance to Circle C Ranch in light of unanswered legal questions concerning the proper application of the grandfather clause and former section 245.004(9) to that land. Those parties reached a settlement determining development rights to Circle C Ranch and a procedure of review of development permits and applications (the "development agreement"). On August 1, 2002, the Austin City Council adopted the development agreement and fifteen additional ordinances as an amendment to the Ordinance, zoning Circle C Ranch by an affirmative vote of six of the seven council members, to be effective August 12, 2002.

On January 13, 2003, the City filed a plea to the jurisdiction, in which it argued that appellants' claims were moot with respect to Circle C Ranch because the development agreement, as an amendment to the Ordinance, controlled all development-permit applications for Circle C Ranch. It also argued appellants' claims regarding the enforceability of the Ordinance were not ripe because they were not based on the application of the Ordinance to any property or development permit. On January 21, appellants amended their pleading to argue that owners of property within the area regulated by the Ordinance, including Stratus, have asserted development rights under the grandfather clause. Appellants attempted to allege their claims with greater specificity and argued that the City maintains a permit procedure by which it reviews applications that claim to be

---

[5] They sought a declaration that some unspecified portions of chapter 245 were unconstitutional, but they do not bring that argument on appeal.

grandfathered from the Ordinance. Finally, they claimed that the City had granted some development permits, not within Circle C Ranch, in violation of the Ordinance. On March 21, 2003, appellants further amended their pleadings in another attempt to allege with specificity permits issued by the City that appellants believed violated the Ordinance.[6]

In both their first and second amended petitions, appellants sought a declaration that the development agreement is invalid. They moved to sever that invalidation claim from this suit on May 1, which the trial court granted on May 7. They then non-suited that separate lawsuit on August 5, 2003.

On May 7, the district court granted the City's plea to the jurisdiction on the grounds of mootness, dismissing appellants' claims relating to Circle C Ranch. Because the ripeness claim concerned only non-Circle C Ranch property, claims of which only appeared in appellants' first and second amended pleadings, the court delayed ruling on the ripeness claim. On May 13, in a final judgment the court granted the City's plea to the jurisdiction on ripeness grounds for property not in Circle C Ranch. This appeal followed.

## DISCUSSION

In three issues on appeal, appellants argue that the district court erred in granting the City's plea to the jurisdiction. We will address each argument in turn.

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Texas Ass'n of Bus. v. Texas Air*

---

[6] We will review the details of appellants' second amended pleading when we consider their arguments that their claims were ripe.

*Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Texas State Employees Union/CWA Local 6184 v. Texas Workforce Comm'n*, 16 S.W.3d 61, 65 (Tex. App.—Austin 2000, no pet.). In order to prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court. *See id.*

Because subject-matter jurisdiction presents a question of law, we review the district court's decision *de novo*. *Id.* In reviewing a trial court's ruling on a plea to the jurisdiction, we do not look at the merits of the case; rather, we "construe the pleadings in favor of the plaintiff," look to the pleader's intent, and accept the pleadings' factual allegations as true. *Texas Ass'n of Bus.*, 852 S.W.2d at 443.

### Mootness

We first consider the district court's ruling that appellants' claims concerning Circle C Ranch were moot. Appellants argue that, because they challenged the validity of the development agreement in their first and second amended petitions, their claims against the City are not moot. We disagree.

Declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought. *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). To constitute a justiciable controversy, there must exist a real and substantial

7

controversy involving a genuine conflict of tangible interests and not merely a theoretical dispute. *Texas Dep't of Public Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.). The mootness doctrine dictates that courts avoid rendering advisory opinions by only deciding cases that present a "live" controversy at the time of the decision. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot when: (i) one seeks to obtain a judgment on some controversy, when in reality none exists; or (ii) one seeks a judgment on some matter that, when rendered for any reason, cannot have any practical legal effect on a then-existing controversy. *Texas Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846-47 (Tex. App.—Austin 2002, no pet.). Cases may become moot when allegedly wrongful behavior has passed and could not be expected to recur. *Securities & Exch. Comm'n v. Medical Comm. for Human Rights*, 404 U.S. 403, 406 (1972); *see also Reyna v. City of Weslaco*, 944 S.W.2d 657, 662 (Tex. App.—Corpus Christi 1997, no writ).

Chapter 245 of the local government code creates a system by which property developers can rely on the land-use regulations in effect at the time "the original application for [a] permit is filed." Tex. Loc. Gov't Code Ann. § 245.002(a). At the same time, because the "laws, rules, regulations, or ordinances of a regulatory agency" may change and those changes may "enhance or protect the project," it allows a permit holder to take advantage of those changes without forfeiting any of its chapter 245 rights. *Id*. § 245.002(d).

In this case, appellants originally filed suit in order to prevent the application of the grandfather clause to Circle C Ranch property because they believed that the legislature had exempted Circle C Ranch development permits from it. *See id*. § 245.002(a); former section

8

245.004(9). In the course of litigation, however, the City amended the Ordinance according to the terms of the development agreement. This amendment was a legislative act by the City and was made effective August 12, 2002. By its terms, it reformed the Ordinance with respect to all development permits requested for Circle C Ranch property. *See City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982) (quoting *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971), for proposition that city ordinance is presumed to be valid and courts have no authority to interfere with its enforcement unless ordinance is unreasonable and arbitrary). Neither Stratus nor the City asserts chapter 245 rights concerning property at Circle C Ranch independent of their rights to rely on the development agreement. *See* Tex. Loc. Gov't Code Ann. §§ 245.001-.006. In addition, appellants are not complaining on appeal that the development agreement is invalid. Although they included that claim in the amended petitions, they severed and then nonsuited that claim.

When filing a claim, a party "may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses." Tex. R. Civ. P. 48. However, because the district court severed appellants' challenge to the development agreement the same day as it ruled on the plea to the jurisdiction, it did not have two alternate claims before it. Rather, it could consider only the question of the application of former section 245.004(9) to the Ordinance. As a result, we also do not have two alternate claims presented on appeal. Thus, we must assume that the terms of the development agreement apply to this case.

9

In this case, appellants seek to apply the terms of the Ordinance as against the terms of land-use regulations in effect at the time Stratus originally sought development permits for Circle C Ranch. However, Stratus and the City are not seeking to apply pre-Ordinance development regulations to requested permits, a situation that would trigger the statutory requirements and exceptions of chapter 245. *See* Tex. Loc. Gov't Code Ann. § 245.002; former section 245.004(9). Rather, Stratus and the City want to apply the terms of the development agreement, a later-enacted ordinance. Because the development agreement amended the Ordinance, Stratus is entitled to rely on that change to the Ordinance in requesting development permits. *Id*. § 245.002(d). In fact, the City adopted the development agreement expressly in order to allow the kinds of permits Stratus is seeking. Thus, any arguments regarding permits issued for Circle C Ranch property must be measured against the requirements of the development agreement rather than against the Ordinance as originally adopted.

Because the development agreement is a validly enacted amendment to the Ordinance, we must find moot any claim in which appellants attempt to apply the original terms of the Ordinance as modified by former section 245.004(9) rather than the terms of the development agreement. We overrule appellants' issue regarding the district court's grant of the plea to the jurisdiction for mootness.[7]

---

[7] Appellants also urge that the district court was inconsistent by granting the City's plea regarding mootness while at the same time severing their attack on the validity of the development agreement. Because the court dismissed appellants' claims without prejudice, and, in any event, because they have nonsuited that separate claim, we need not consider their arguments.

10

*Ripeness*

Having decided that appellants' claims concerning property at Circle C Ranch are moot, the district court determined that their claims to non-Circle C Ranch property were not ripe for adjudication. On appeal, appellants argue that (1) the district court's ruling ignores the plain language of chapter 245 of the local government code; (2) the policies underlying the Uniform Declaratory Judgments Act (UDJA) overcome the ripeness issues in this suit; (3) the district court's ruling ignores the language of the pleadings, which appellants assert include the specificity that the City seeks to require under chapter 245; and (4) the development agreement provides a specific case of the City giving final approval for development in violation of the Ordinance. In part, appellants rely on *City of Glenn Heights v. Sheffield Development Co.*, 55 S.W.3d 158, 166 (Tex. App.—Dallas 2001, pet. denied), to assert that chapter 245 does not require that they wait until an actual application be approved before it can file suit. Appellants also argue that they adequately pleaded the existence of particular property that may have applications pending before the City or that may have approved applications.[8] We disagree.

A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass. *Patterson v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). "For a controversy to be justiciable, there must be a real controversy between the parties that will be actually resolved by the judicial relief

---

[8] We note that appellants do not present a constitutional challenge to any statute or regulation. *See, e.g.*, *Mayhew v. City of Sunnyvale*, 964 S.W.2d 922, 928-38 (Tex. 1998). We will only review the ripeness of their claim under the rights created under the statute on which they base their claim. *See Continental Cas. Ins. Co. v. Functional Restoration Assoc.*, 19 S.W.3d 393, 404-05 (Tex. 2000).

11

sought." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). An action for declaratory judgment would lie when the fact situation manifests the presence of "ripening seeds of a controversy." *Moore*, 985 S.W.2d at 153-54. Such appear where the claims of several parties are present and indicative of threatened litigation in the immediate future which seems unavoidable, even though the differences between the parties as to their legal rights have not reached the state of an actual controversy. *Id.* at 154. The doctrine has a pragmatic, prudential aspect that is directed toward "[conserving] judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes." *Mayhew*, 964 S.W.2d at 928. Moreover, avoiding premature litigation prevents courts from entangling themselves in abstract disagreements, while allowing other branches of government and governmental agencies to perform their functions unimpeded. *Patterson*, 971 S.W.2d at 443. A claimant need not show that the injury has occurred, provided that the injury is imminent or sufficiently likely. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000); *Patterson*, 971 S.W.2d at 442. To determine ripeness, we must examine both the fitness of the issues for judicial decision and the hardship occasioned by the court's denying judicial review. *Office of Pub. Util. Counsel v. Public Util. Comm'n*, 843 S.W.2d 718, 724 (Tex. App.—Austin 1992, writ denied).

First, we will consider the level of specificity chapter 245 and the UDJA require of claims. *See* Tex. Loc. Gov't Code Ann. §§ 245.001-.006; Tex. Civ. Prac. & Rem. Code Ann. §§ 37.003-.004 (West 1997). The legislature created a system of rights concerning the issuance of land-use permits in chapter 245 to require each regulatory agency "to consider the approval, disapproval, or conditional approval" of individual applications for permits based upon the land-use

12

regulations "in effect at the time the original application for the permit is filed." Tex. Loc. Gov't Code Ann. § 245.002(a). The statute also describes in detail the manner of determining which regulations apply when considering "a series of permits." *Id*. § 245.002(b). Permit holders may take advantage of changes in local regulations "that enhance or protect the project" without forfeiting rights created in chapter 245. *Id*. § 245.003(c). The chapter also includes provisions on the application of various regulations to dormant projects. *Id*. § 245.005. Chapter 245 rights and procedures "may be enforced only through mandamus or declaratory or injunctive relief." *Id*. § 245.006.

We disagree that "there is no indication chapter 245 requires a plat application formally be denied before a court can determine the parties' zoning rights." *See Sheffield Dev. Co.*, 55 S.W.3d at 166. Chapter 245 focuses directly on a party's zoning rights. *See id*. Because of this focus, when a party presents the question of the proper application of chapter 245 to a city ordinance, as appellants do here, it must allege some facts to show that the city has applied its regulations to a particular case. A regulatory agency ought to have the opportunity to make a final determination as to which set of land-use regulations apply to a specific plat before a court intervenes. *See* Tex. Loc. Gov't Code Ann. §§ 245.002-.005; *Patterson*, 971 S.W.2d at 443. The individual and particular nature of this statutory scheme requires that individual permits be issued or denied for a controversy to be ripe for adjudication. Otherwise, a court would be ruling on a hypothetical application of land-use regulations to plats and interfering with the functions of land-use regulatory agencies before they would have the opportunity to perform those functions themselves. *See* Tex. Loc. Gov't Code Ann. § 245.002; *Patterson*, 971 S.W.2d at 443.

13

Next, we consider whether appellants pleaded with the specificity required under chapter 245. To support their argument, appellants point to four paragraphs in the second amended pleading:

> 62. Despite [the] mandate of [the Ordinance], the City of Austin, through its administrative staff and its Zoning and Platting Commission, has repeatedly approved development permit applications that do not comply with the SOS Ordinance. For example, the City's "HB 1704 Weekly Update" shows that on February 4, 2003, the 1704 Committee approved a 1704 request for 16.48 acres of property in the Barton Spring Zone.[9] The project name is the Village of Western Oaks, Section 31 Townhomes. A site plan for this project was previously approved but expired. The expired permit was reviewed under regulations in effect on May 2, 1984, the filing date of the preliminary subdivision for the Village at Western Oaks, and City records reveal that the re-issued permit is likewise to be reviewed and approved under pre-SOS ordinance standards.
>
> 63. City records further show that on a regular, and sometimes weekly, basis, the City staff meets to review development permit requests seeking to develop under terms of ordinances that preceded the SOS ordinance, and that are not as protective of property and human health. As a result, in almost every month up to and including February 2003 at least one, if not several, requests for development under ordinances that pre-date SOS are approved. The City's HB 1704 Weekly Update shows that from May 1999 to February 2003, the City staff approved more than 60 requests for application of pre-SOS ordinances to proposed development in the Barton Springs Zone.
>
> * * * *
>
> 65. The initial decision whether or not to grandfather a permit or amendment, extension, or renewal thereto is made by the City's "1704 Committee." The 1704 Committee is composed of about six City staff members who review a developer's "1704 Determination Request." While Defendant City contends that decisions of the 1704 Committee are not formal City decisions, rarely, if

_____

[9] House Bill 1704, approved by the legislature in 1999, added to the local government code the statute at issue in this case. *See* former Tex. Loc. Gov't Code Ann. § 245.004(9). As a result, the City uses the term "1704 Committee" to refer to the committee it employs to review land-use applications under that statute.

14

ever, are these 1704 Committee determinations not followed by City staff charged with making the final development approval on some classes of developmental permit approvals that are made administratively, nor are these determinations challenged or overridden by the City's Zoning and Platting Commission, which is charged with making final City decisions on some other development permits. City records show that 1704 approvals often expire before development happens, and developers re-approach the City for an extension of the grandfathering decision or to request a new grandfathering decision. Therefore, the City will continue to face new requests for permits and amendments, extensions, and renewals of permits that do not comply with the SOS ordinance because of a claim of grandfathering under Chapter 245.

66. City records and other information also show[]that thousands of acres of land for which preliminary plans were filed before the SOS ordinance was approved have not yet been developed and thus the City will continue to receive applications for subsequent approvals for site plans, final plats, building permits, and amendments, revisions and extensions thereto where such applications seek development authorization under pre-SOS ordinance standards. Defendant Stratus Properties Inc. holds land in this category totaling more than 1000 acres at its "Barton Creek" and "Lantana" developments and has indicated its desire to develop this land under standards that do not comply with the SOS ordinance. The City of Austin has granted such requests on parts of this land without enacting a lawful amendment to the SOS ordinance.

What appellants have alleged, then, is that (i) developers have submitted permit applications; (ii) the City's "1704 Committee" has approved those applications; (iii) the "1704 Committee" does not have final authority to issue permits, but that power is reserved to the City's Zoning and Platting Commission; and (iv) Stratus owns property in the Barton Creek Zone and has indicated a desire to develop that property. They did not allege that the City's Zoning and Platting Commission had issued a permit applying the guidelines of chapter 245 to property in the area covered by the Ordinance.

Given a plain reading of appellants' second amended pleading, in light of the specificity required for pleading under chapter 245, we hold that appellants have failed to allege a

15

claim that is ripe for the district court to review. In addition, because a grant of a permit by the City does not automatically result in immediate development and appellants would have ample opportunity in such case to challenge the granted permit, they will not suffer any additional hardship by waiting until a permit is granted. We also found, as discussed above, that the development agreement was an amendment to the Ordinance, which appellants no longer dispute. Thus, we will not read the development agreement to be an example of "final approval for development in violation of the Ordinance." We overrule appellants' challenge to the district court's judgment that its claims were not ripe.

*Opportunity to Amend Pleadings*

In their final issue, appellants argue that the district court ought to have granted them the opportunity to amend their pleading to establish jurisdiction. A failure to allege sufficient facts to demonstrate jurisdiction does not necessarily authorize immediate dismissal. *City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 753 (Tex. App.—Austin 1998, no pet.). When a plaintiff fails to plead facts that establish jurisdiction but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Tex. Dep't of Parks & Wildlife v. Miranda*, 47 Tex. Sup. Ct. J. 386, 390-93, 2004 Tex. LEXIS 304 (April 2, 2004) (citing *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002)). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* Additionally, if a party has repleaded in an attempt to cure disputed jurisdictional issues and if a court can ascertain the nature and issues of the controversy and the evidence that probably would be

16

relevant, that party is not entitled to an opportunity to replead. *See id*. at 394 (citing Tex. R. Civ. P. 47).

In this case, after the City filed its plea to the jurisdiction, appellants amended their petition twice, first a week after the City filed the plea to the jurisdiction and again two months later. The court did not issue its final order until almost two months after they filed their second amended petition and had refrained from ruling on the merits of the ripeness claim to give appellants time for discovery. In addition, the court gave them notice of what it was requiring in order for it to deny the plea, and only after discovery did the court consider the pleadings and arguments and grant the plea. Under these facts, their second amended petition provided sufficient notice to the district court to ascertain the nature and issues of the controversy and the evidence that probably would be relevant. *See id*. Thus, the court had no obligation to grant appellants further opportunities to amend their pleading. We overrule appellants' final issue.

### CONCLUSION

Because we overrule appellants' issues on appeal, we affirm the judgment of the district court.

---

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: May 6, 2004

17