**AFFIRMED; Opinion Filed October 23, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00560-CV**

**SAMMY BICKHAM, JR., KRISTEN BICKHAM,
AND KIRK LAUNIUS, Appellants**

**V.**

**DALLAS COUNTY, TEXAS, TONI PIPPINS-POOLE, IN HER OFFICIAL
CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION
MANAGER, DANIEL BRADLEY, IN HIS OFFICIAL CAPACITY AS
DALLAS COUNTY CENTRAL COUNTING STATION SUPERVISOR,
NICOLAS MEVELLEC, IN HIS OFFICIAL CAPACITY AS DALLAS
COUNTY CENTRAL COUNTING STATION ASSISTANT TABULATION
SUPERVISOR, AND ELECTION SYSTEMS & SOFTWARE, LLC,
Appellees**

**On Appeal from the 191st Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-19-06162**

## OPINION

Before Chief Justice Burns, Justice Schenck, and Justice Osborne
Opinion by Chief Justice Burns

In this appeal, we consider whether "election watchers"—persons appointed

to observe the conduct of an election under Chapter 33 of the Texas Election Code—

have standing to pursue claims against certain election officials for alleged violations

of chapter 33 and the Texas Administrative Code. Concluding they do not, we affirm the trial court's judgment dismissing appellants' claims for lack of jurisdiction.

## BACKGROUND

In recent years, appellants Sammy Bickham, Jr., Kristin Bickham, and Kirk Launius served as appointed election watchers in the Dallas County Central Counting Station (DCCCS). The Bickhams were appointed by various candidates and political action committees for the 2016, 2018, and 2019 elections, and Launius was appointed by a political action committee for the 2019 election. All three appellants have been re-appointed as watchers for the 2020 elections.

Appellants sued Dallas County, Toni-Pippins Poole in her capacity as DCCCS Manager, Daniel Bradley in his capacity as DCCCS Tabulation Supervisor, Election Systems & Software, LLC (ES&S), Nicolas Mevellec, an ES&S employee and Assistant Tabulation Manager at DCCCS, and other parties that appellants have now dismissed from the suit.

After an opportunity to amend their petition, appellants asserted six claims:

- Claim 1: In previous elections, Poole, Bradley, and Mevellec counted early votes more than once prior to Election Day and printed early vote results prior to Election Day, in violation of Texas Administrative Code Rule 81.36(n)[1] and election code section 33.056(a)[2];

---

[1] Administrative code rule 81.36(n) states: "The Central Counting Station personnel may convene only once prior to election day to count early votes. Any ballots received after the ballot board judge delivered the ballots to the manager shall be counted on election day." 1 TEX. ADMIN. CODE § 81.36(n).

[2] Section 33.056(a) of the election code states: "Except as provided by Section 33.057, a watcher is entitled to observe any activity conducted at the location at which the watcher is serving. A watcher is

–2–

- Claim 2: Mevellec "uses illegal private internet capable and internet active computer devices to record, store and remove election data from the Central Counting Station thus obstructing and preventing watchers from observing and documenting evidence of vote tabulation illegalities";

- Claim 3: "Defendants have repeatedly prevented Plaintiffs from sitting near election officials performing Central Counting Station activities";

- Claim 4: "Defendants have prevented Plaintiffs . . . from inspecting returns and other election records in Central Counting";

- Claim 5: Pippins-Poole prevented the Bickhams from leaving the Central Counting Station room to go to the bathroom and/or use their phones; and

- Claim 6: Sammy Bickham did not receive a complete DCCCS central accumulator audit log from Bradley.

Appellants alleged these violations occurred during the May 2019 bond election and other previous elections. They sought prospective injunctive relief, declaratory relief, and a writ of mandamus, seeking to prevent similar election-code violations in upcoming elections.[3]

Appellees filed pleas to the jurisdiction and special exceptions to both appellants' original petition and to the amended petition. Among the complaints raised in their pleas, appellees challenged appellants' common law and statutory standing to bring their claims. Generally, appellees argued that appellants are in the same position as any other citizen or voter, and, in the absence of any particularized

---

entitled to sit or stand conveniently near the election officers conducting the observed activity." TEX. ELEC. CODE § 33.056(a).

[3] Appellants' amended petition sought to cure jurisdictional issues by stating with greater specificity the harm they claim arose from the alleged statutory and rule violations, not by asserting additional causes of action. They pleaded that those statutory violations led to the particularized injury necessary for standing.

harm, they lacked common-law standing to bring a lawsuit to insist that the government follow the law. Appellees also maintained that appellants did not have statutory standing because the election code does not provide for a private, civil cause of action.

After considering appellees' pleas to the jurisdiction and special exceptions and appellants' responses, the trial court granted the pleas without stating a basis for its ruling and dismissed the lawsuit. This appeal followed.

In four issues, appellants generally contend the trial court erred by dismissing their lawsuit because:

1.  As election watchers, appellants had standing to challenge election officials' actions that violated the election code and caused appellants particularized harm;

2.  Trial courts have jurisdiction to issue writs of mandamus in election cases;

3.  Pippins-Poole and Bradley are not immune from liability for their ultra vires acts in the conduct of Dallas County elections; and

4.  Appellants "properly alleged" that ES&S and Mevellec "effectively run elections in Dallas County."

Because we conclude that appellants lack standing to assert their claims, we address only their first issue.

### STANDARD OF REVIEW

Standing is a constitutional prerequisite to maintaining suit. *Jefferson Cty. v. Jefferson Cty. Constables Ass'n*, 546 S.W3d 661, 666 (Tex. 2018). Questions of standing implicate the court's subject-matter jurisdiction over the case. *Id.* We

–4–

review questions of jurisdiction de novo. *Farmers Tex. Cty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

In evaluating standing, we construe the pleadings in the plaintiffs' favor. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). We also consider relevant evidence, if any, that is offered by the parties. *Id.* A trial court must grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when the pleadings do not state a cause of action upon which the trial court has jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004). But, if a party has repleaded in an attempt to cure disputed jurisdictional issues and the court can ascertain the nature and issues of the controversy and the evidence that probably would be relevant, that party is not entitled to an opportunity to replead. *Save Our Springs All., Inc. v. City of Austin*, 149 S.W.3d 674, 686 (Tex. App.—Austin 2004, no pet.).

## DISCUSSION

The election code defines a "watcher" as "a person appointed . . . to observe the conduct of an election on behalf of a candidate, a political party, or the proponents or opponents of a measure." TEX. ELEC. CODE § 33.001. Under chapter 33 of the election code, a watcher is entitled to:

- "observe any activity conducted at the location at which the watcher is serving," *id.* § 33.056(a);

- "sit or stand conveniently near the election officers conducting the observed activity," *id.*;

- "sit or stand near enough to the member of a counting team who is announcing the votes to verify that the ballots are read correctly or to a

–5–

member who is tallying the votes to verify that they are tallied correctly," *id.* § 33.056(b);

- "inspect the returns and other records prepared by the election officers at the location at which the watcher is serving," *id.* § 33.056(c);

- make written notes, *id.* § 33.056(d);

- "call the attention of an election officer to any occurrence that the watcher believes to be an irregularity or a violation of law and may discuss the matter with the officer," *id.* § 33.058(b); and

- accompany the officer in making the delivery of election records, *id.* § 33.060.

Chapter 33 provides certain remedies for violations of its provisions. For example, an election watcher who witnesses a violation has a right to call the problem to the attention of an election officer, and that election officer may, in turn, refer the matter to the presiding officer. ELEC. CODE § 33.058(b). Chapter 33 also sets forth criminal penalties for someone who violates a watcher's ability to complete his or her duties. *Id.* § 33.061. Such violations are Class A misdemeanors. *Id.*

In their first issue, appellants contend the trial court erred by determining they lacked standing to bring their claims.[4] We begin our discussion of this issue by

---

[4] The Dallas County appellees (Dallas County, Pippins-Poole, and Bradley) also assert appellants' claims are moot because appellants' certificates of appointment for the May 2019 bond election expired before appellees were served. The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *FDIC v. Nueces Cty.*, 886 S.W.2d 766, 767 (Tex. 1994). The "capable of repetition yet evading review" exception to the mootness doctrine applies when the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot. *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999). There must also be a reasonable expectation that the same action will occur again if the issue is not considered. *Id.* The exception applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he or she will again be subjected to the

–6–

noting that no Texas court has ever recognized that a plaintiff's status as a voter, without more, confers standing to challenge the lawfulness of governmental acts. *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). And, appellants do not make such an allegation. Rather, they allege standing not as voters, but instead on the basis of their positions as election watchers. Specifically, appellants argue that chapter 33 of the election code granted them certain rights, duties, and authority, and that by violating those rights, appellees caused appellants particularized harm.

Citizens generally lack standing to bring a lawsuit challenging the lawfulness of governmental acts. *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 7 (Tex. 2011) (citing *Brown*, 53 S.W.3d at 302). After all, "governments cannot operate if every citizen who concludes that a public official has abused his discretion is granted the right to come into court and bring such official's public acts under judicial review." *Williams v. Lara*, 52 S.W.2d 171, 180 (Tex. 2001) (discussing limitations on taxpayer standing).

Both the Texas Supreme Court and the United States Supreme Court have cautioned that courts must carefully apply jurisdictional limitations such as standing because these limitations "identif[y] those suits appropriate for judicial resolution."

---

alleged illegality. *Tex. A&M Univ.—Kingsville v. Yarbrough*, 347 S.W.3d 289, 290–91 (Tex. 2011). Appellants have served as election watchers in recent years, and they have been again appointed as watchers for the 2020 election. And, there is a reasonable expectation that the alleged illegality could occur again. According to appellants, the alleged violations have not been isolated events but rather have recurred "in election after election." Under these circumstances, we conclude the "capable of repetition yet evading review" doctrine applies here, at least until the close of counting in the November 2020 election.

*See Brown*, 53 S.W.3d at 305 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 154–55 (1990), and discussing *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). In Texas, common law standing requires establishing a concrete injury to the plaintiffs and a real controversy between the parties that will be resolved by the court. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 154 (Tex. 2012). "Standing consists of some interest peculiar to the person individually and not as a member of the general public." *In re Kherkher*, 604 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2020, orig. proceeding) (mandamus denied). This is to ensure that there is a real need for judicial review, so that "other branches of government may more appropriately decide 'abstract questions of wide public significance,' particularly when judicial intervention is unnecessary to protect individual rights." *Andrade*, 345 S.W.3d at 7 (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).

Standing to sue may be predicated on either statutory or common law. *In re Kherkher*, 604 S.W.3d at 551. In conferring statutory standing, the legislature may by statute exempt litigants from proof of the "special injury" required to establish common-law standing. *See,* e.g*., Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 472 (Tex. 1993) (Doggett, J., concurring and dissenting) (providing examples—including the Texas Declaratory Judgments Act—of statutory standing granted in the absence of personal injury-in-fact). Common-law standing rules apply in all cases absent a statutory exception to the contrary. *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984).

The legislature may grant private standing to bring such actions, but it must do so clearly. *See Brown v. De La Cruz*, 156 S.W.3d 560, 567 (Tex. 2004). "When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis." *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.). We apply a "strict rule of construction" to statutory enforcement schemes and imply causes of action only when the drafter's intent is clearly expressed from the language as written. *De La Cruz*, 156 S.W.3d at 567. The fact that a statute has been violated and some person has been harmed does not automatically give rise to a private cause of action in favor of that person. *Cannon v. Univ. of Chicago*, 441 U.S. 677, 687 (1979).

Common-law standing, in contrast, requires proof of a special injury. To establish common-law standing, a plaintiff must first establish the plaintiff suffered an "injury-in-fact." *Heckman*, 369 S.W.3d at 154–55. To demonstrate an injury-in-fact, "[t]he plaintiff must be personally injured—he must plead facts demonstrating that he, himself, rather than a third party or the public at large, suffered the injury." *Heckman*, 369 S.W.3d at 155. Second, the injury must be traceable to the defendant. *Id.* Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* (quoting *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304–05 (Tex. 2008)).

Our analysis is limited to the claims and injuries as alleged in the petition and whether those claims and injuries are sufficient to allege jurisdiction. *See Sykes*, 136

–9–

S.W.3d at 639; *Save Our Springs All.*, 149 S.W.3d at 686. On this point, we part company with the dissent, which urges that we should consider unpleaded equal protection and voter dilution claims as a basis for appellants' standing. As the supreme court explained in *Sykes*, once a plaintiff "has been provided a reasonable opportunity to amend" in response to a plea to the jurisdiction but the amended pleading is insufficient to allege jurisdiction, the amended petition should be dismissed with prejudice. *Sykes*, 136 S.W.3d at 639–40 ("A trial court must grant a plea to the jurisdiction, after providing an appropriate opportunity to amend, when the pleadings do not state a cause of action upon which the trial court has jurisdiction."). Appellants have been granted their opportunity to amend, and we consider their standing to assert the claims they have pleaded.

1. **Statutory Standing**

Although appellants pleaded standing on the basis of their rights under chapter 33, they do not specifically argue the election code confers them standing to assert their rights. Nevertheless, it is our duty to determine standing as a prerequisite to subject-matter jurisdiction. *See Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019) (although neither party questioned standing, "we are duty-bound to determine whether it exists"). "The importance of this inquiry—even when not urged by the parties—cannot be overstated." *Id.*

Appellees argue that when, as here, a private right of action is pursued for a statutory violation, standing must be established under that statute. According to

–10–

appellees, appellants cannot do so because the legislature provided specific remedies for violations of statutes relating to election watchers, and there is no private, civil action among those remedies.

As we have discussed, chapter 33 provides certain remedies for violations of its provisions. *See* ELEC. CODE §§ 33.058(b) (watcher may call election officer's attention to irregularity or violation of law); 33.061 (penalty for unlawfully obstructing watcher). But there is nothing in these provisions to show or imply that the legislature explicitly granted a private right of action for election watchers to sue for chapter 33 violations. *See De La Cruz*, 156 S.W.3d at 563 (finding no private right of action where statute provided for a penalty when violated but was "silent about who may collect it"). Given the legislature's determination to provide only criminal penalties, but not a civil cause of action, we conclude election code chapter 33 does not create standing for appellants to sue.

Nor do other election code sections—even those that include certain remedies for violations—provide standing for appellants. Section 273.081, for example, authorizes injunctive relief for a person "who is being harmed or is in danger of being harmed by a violation or threatened violation of this code." ELEC. CODE § 273.081. And, section 273.061 provides that "the supreme court or a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election or a political party

convention, regardless of whether the person responsible for performing the duty is a public officer." *Id.* § 273.061.

As other courts have already explained, neither provision automatically creates standing for plaintiffs. In *Andrade*, the supreme court addressed whether section 273.081 conferred standing on voters who alleged that the Secretary of State's certification of a paperless direct-recording electronic-voting machine, known as "eslate," deprived them of their statutory right to a recount. *See Andrade*, 345 S.W.3d at 17. The supreme court held that section 273.081 "does not create standing—it merely authorizes injunctive relief." *Id.* The court explained that statutes such as section 273.081, "which permit 'persons aggrieved,' 'persons adversely affected,' [or] 'any party in interest,' to sue, still require that the plaintiff show how he has been injured or damaged other than as a member of the general public." *Id.* (quoting *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966)). Because the voters made no showing that the Secretary of State's certification of the "eslate" machine harmed them other than as members of the general public, the court concluded that plaintiffs lacked standing to sue. *Id.*

And, in *Kherkher*, the Fourteenth Court of Appeals addressed whether section 273.061 conferred standing on a plaintiff challenging the nomination of a candidate for district judge by the local Democratic Party. *Kherkher*, 604 S.W.3d at 551–53. Relying on the reasoning in *Andrade*, the court observed that if the language found in section 273.081—"[a] person who is being harmed or is in danger of being harmed

–12–

by a violation or threatened violation of this code"—does not confer standing without a showing of harm other than as a member of the general public, then there is no reason to conclude that section 273.061 would create individual standing without the claimant showing a particularized injury beyond that of the general public. *Id.* at 553. For the same reasons as expressed in *Andrade* and *Kherkher*, we conclude neither section 273.081 nor section 273.061 of the election code creates standing for appellants to enforce their rights under the election code.

## 2. Common-law Standing

We next consider whether appellants have established that they have suffered the "injury-in-fact"—the concrete, particularized, actual or imminent invasion of a legally protected interest—required to show they have standing under the common law. *See Heckman*, 369 S.W.3d at 154–55. Appellees argue that appellants cannot show they have an interest in the alleged violations that is distinct from members of the general public, and thus they have failed to allege that appellees caused appellants a particularized injury.

We assume for purposes of this discussion that appellees committed violations of the election and administrative codes. But election watchers, by definition, are "appointed . . . to observe the conduct of an election *on behalf of* a candidate, a political party, or the proponents of a measure." ELEC. CODE § 33.001 (emphasis added). Thus, as appellees correctly point out, any injury-in-fact stemming from the alleged election code violations would not be suffered by appellants individually.

–13–

Rather, the injury would be suffered by the candidate, political party, or proponents or opponents of a measure for whom they serve. As the dissent correctly notes, the election watcher's purpose is to act as the candidate's "eyes and ears." If the watchers are prevented from being the candidate's "eyes and ears," that particular harm is suffered by the candidate, not by the election watcher.[5]

Appellants allege standing on the basis of their special status as election watchers. They allege they have suffered various particularized injuries unique to their roles as election watchers, including:

- having to be physically present more often;

- being prevented from "witnessing and documenting activities as authorized by the election code" causing them injury because they will have incomplete affidavits for use in future election contests;

- having to stand;

- not being able to use the bathroom; and

- not having a complete audit log in violation of the Texas Administrative Code.

These alleged injuries, however, do not constitute a "legally protected interest," even under the specific provisions appellants cite. *See Heckman*, 369 S.W.3d at 154–55. Section 33.055 says nothing about guaranteeing bathroom breaks, use of phones, or the ability to complete affidavits for future use. Likewise, administrative code rule 31.36(n) says nothing about limiting the number of days election officers must work.

---

[5] We express no opinions regarding a candidate's standing to sue for alleged election-code violations, as that issue is not before us in this appeal.

And, section 33.056 plainly provides that a watcher is entitled "to sit *or* stand conveniently near the election officers conducting the observed activity." ELEC. CODE § 33.056 (emphasis added). That provision does not guarantee that the watcher must be allowed to sit.

Because appellants have not shown particularized harm from violation of a legally protected interest, they cannot assert an injury-in-fact. *See Tex. Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 906 (Tex. App.—Austin 2009, no pet.) (holding that appellees lacked standing where they failed to establish that the altered appearance of driver's licenses implicated a recognizable legally protected interest). Absent this showing, we conclude appellants have failed to meet their burden to show an injury-in-fact, and, as a result, lack standing to pursue their claims.

In reaching our conclusion that appellants lack standing, we have considered and rejected additional arguments made by appellants and by the dissent. First, we reject appellants' contention that *Blum v. Lanier*, 997 S.W.2d 259 (Tex. 1999), mandates a different result. In *Blum*, the supreme court held that a qualified voter who signed an initiative petition had standing to challenge the form in which a referendum was put to the citizens. *Id.* at 262. Because Blum objected to the ballot description of the proposed charter amendment, the supreme court concluded he could seek to enjoin the referendum election. *Id.* The court reasoned that citizens who exercise their rights under initiative provisions act as and "become in fact the

legislative branch of the municipal government," and as such, have an interest in the election distinct from that of the general public. *Id.* at 262.

Here, appellants contend that, like the petition signer in *Blum*, they are challenging the process rather than the election. But as the supreme court has recognized, *Blum* is a narrow holding—affording petition signers the right to challenge the referendum process because they are functioning as the legislative branch. *Brown*, 53 S.W.3d at 303. *Blum* relied on the supreme court's determination in *Glass v. Smith*, 244 S.W.2d 645 (Tex. 1951), that the signers of a voter-initiated election had a justiciable interest in having their proposed ordinance submitted to the people for a vote. *Glass*, 244 S.W.2d at 648. The *Blum* court extended the principle in *Glass* to give the petition signer not merely an interest in the election being held, but also in having it validly conducted. *Brown*, 53 S.W.3d at 297. Those narrow holdings are consistent with the judiciary's limited role in election disputes, which provides a remedy to undo elections tainted by fraud, illegality, or other irregularity. *Id.*; *Blum*, 997 S.W.2d at 262.

Appellants are not petition signers, and unlike the petition signers in *Blum* or *Glass*, they have not shown an election interest that is distinct from voters at large. Although they allege impurity in the process, that interest is not distinct from voters at large, all of whom are presumed to want the election to be conducted in compliance with the law. To find standing as suggested by appellants would require an expansion of *Blum*, and it is not our proper role as an intermediate court to do so.

*Save Our Springs All. Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 882 (Tex. App.—Austin 2020, pet. denied).

Second, we reject the dissent's suggestion that our opinion is at odds with the many years of voter's rights jurisprudence. Appellants have not made allegations asserting denial of equal protection as in *Baker v. Carr*, 369 U.S. 186 (1962) (voters have standing to bring equal protection challenges to complain of vote dilution), or in *Andrade*, 345 S.W.3d at 10–11 (voters have standing to bring equal-protection complaints that an electronic voting system is susceptible to fraud and prone to malfunction, depriving them of the ability to determine whether their votes have been counted), the cases the dissent relies on to conclude appellants have standing. Nor have appellants asserted violations of the Voting Rights Act or the need for federal oversight of elections, concerns also expressed by the dissent.

Our opinion does not address these concerns because appellants did not raise them nor plead them as a basis for jurisdiction. We express no opinion as to whether that equal-protection jurisprudence and accompanying protections might have been available to appellants had they chosen to invoke them. They have not, and given the particular procedural posture of this case, our duty is to examine the claims and injuries as alleged in the amended petition to determine if those particular claims and injuries are sufficient to confer standing. *See H.S.*, 550 S.W.3d at 155. Although the dissent maintains that the discussion of equal protection claims such as in *Baker* and *Andrade* are a matter of merely considering an argument not raised by the parties,

which we may clearly do, we cannot agree. Following the dissent's lead would require us to reimagine the claims and injuries pleaded by the appellants and to consider whether they are sufficient to show standing. *Cf. Sykes*, 136 S.W.3d at 639–40 (trial court must dismiss plaintiff's action, if, after providing appropriate opportunity to amend, pleadings do not state cause of action upon which trial court has jurisdiction).

We conclude that the legislature has not conferred statutory standing to appellants exempting them from showing proof of a special injury. Nor have appellants alleged claims or injuries showing they have common-law standing to assert their claims. Because appellants' lawsuit, as pleaded, fails for lack of standing, we overrule appellant's first issue. Having done so, we need not address their remaining issues.

Accordingly, we affirm the trial court's judgment of dismissal.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

Schenck, J., dissenting

200560F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SAMMY BICKHAM, JR., KRISTEN BICKHAM, AND KIRK LAUNIUS, Appellants

No. 05-20-00560-CV    V.

DALLAS COUNTY, TEXAS, TONI PIPPINS-POOLE, IN HER OFFICIAL CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION MANAGER, DANIEL BRADLEY, IN HIS OFFICIAL CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION SUPERVISOR, NICOLAS MEVELLEC, IN HIS OFFICIAL CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION ASSISTANT TABULATION SUPERVISOR, AND ELECTION SYSTEMS & SOFTWARE, LLC Appellees

On Appeal from the 191st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-06162. Opinion delivered by Chief Justice Burns. Justices Schenck and Osborne participating

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee DALLAS COUNTY, TEXAS, TONI PIPPINS-POOLE, IN HER OFFICIAL CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION MANAGER, DANIEL BRADLEY, IN HIS

OFFICIAL CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION SUPERVISOR, NICOLAS MEVELLEC, IN HIS OFFICIAL CAPACITY AS DALLAS COUNTY CENTRAL COUNTING STATION ASSISTANT TABULATION SUPERVISOR, AND ELECTION SYSTEMS & SOFTWARE, LLC recover their costs of this appeal from appellant SAMMY BICKHAM, JR., KRISTEN BICKHAM, AND KIRK LAUNIUS.

Judgment entered this 23rd day of October, 2020.