

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-18-00327-CV

_____

**SHIRLEY DUPRIEST AND FRED DUPRIEST,**

**Appellants**

 **v.**

**NIMITZ PROPERTIES, LLC,**

**Appellee**

_____

**From the 361st District Court**
**Brazos County, Texas**
**Trial Court No. 17-002326-CV-361**

_____

## MEMORANDUM OPINION

_____

The trial court granted Nimitz's plea to the jurisdiction and dismissed the suit for

declaratory judgment that the Dupriests had filed. Because the trial court had subject

matter jurisdiction in this case, we reverse and remand this case to the trial court for

disposition on the merits.

In 1923, the owners of certain property in College Station formed College Park

Subdivision. One of the developers was College Station Housing Corporation. Southside

Development Company was another developer of College Park; neither is any longer in existence. The plat of College Park provided for lots, blocks, and streets, but neither contained nor referenced any restrictions as to the use of the property in the subdivision.

The Dupriests and Nimitz own property in College Park. Nimitz owns Lots 4 and 5, Block 1, College Park. On December 1, 1927, College Station Housing Corporation conveyed this property to J.R. McGee. The deed to McGee contained this restriction, among others:

> Churches, stores, theatres, school houses, and other central meeting places shall be constructed only on lots provided in the plan for establishments of that kind unless agreed to by the board of directors of the said company.

Nimitz bought this property on October 16, 2016.

The Dupriests own Lot 1, Block 5, College Park. On October 5, 1942, College Station Housing Corporation conveyed this property to L.G. Lapham. The deed to Lapham also contained the above restriction. The Dupriests bought this property on May 7, 2007.

The record shows that Nimitz intends to build a commercial establishment, Aggieland Outfitters, on its property. The Dupriests contend that Nimitz cannot build a "store" on the property because the above-quoted restriction, contained in the deeds to McGee and Lapham, prevents it.

On September 1, 2017, the Dupriests filed a petition for declaratory judgment in which they sought a declaration that the restriction was valid and enforceable as to the

Nimitz property. Ultimately, Nimitz filed an amended plea to the jurisdiction and motion to dismiss the Dupriests' lawsuit.

Nimitz claimed that there were a number of reasons why the trial court should grant its amended plea to the jurisdiction and dismiss the lawsuit: the Dupriests lacked standing to assert the validity and enforceability of the restriction, they had failed to present a justiciable controversy, they were seeking an impermissible advisory opinion, and their declaratory judgment action was not ripe for action by the trial court.

From the record, it appears that the trial court held a hearing on the plea to the jurisdiction and motion to dismiss on August 31, 2018. At the conclusion of the hearing, the trial court announced its ruling that the Dupriests had standing and that it was "not going to grant the plea to the jurisdiction."

Some 18 days later, as it was permitted to do, the trial court changed its mind and sent an e-mail to the attorneys in which it states its opinion that the Dupriests were asking it to issue an impermissible advisory opinion. The trial court also stated its opinion that there was no actual controversy presented to it and that it was not allowed to rule upon hypothetical or contingent issues or matters that were not essential to a decision in an actual controversy. The court wrote: "Because I believe that there is not an actual controversy before the court at this time, the Court must decline to permit the case to proceed."

Then, by written order dated the next day, September 19, 2018, the trial court ruled

Dupriest v. Nimitz Prop., LLC

that "[Nimitz's] Amended Plea to the Jurisdiction and Motion to Dismiss should be **GRANTED**. It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that [Nimitz's] Amended Plea to the Jurisdiction and Motion to Dismiss is **GRANTED**." According to the Dupriests' notice of appeal, it is this order from which they appeal.

Because it found that it did not have subject matter jurisdiction, the trial court did not rule upon competing motions for summary judgment that the parties had filed.

Simply stated, the issue in this appeal is whether the trial court had subject matter jurisdiction to hear and determine the merits of this case. Subject matter jurisdiction must exist before a court has authority to hear and determine a case. *The State Bar v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994). Whether subject matter jurisdiction exists is a matter of law that we review de novo. *Tex. DOT & Edinburg v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013). The issue may be raised for the first time on appeal either by the parties to the appeal or the court. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 445-446 (Tex. 1993). Therefore, we will address neither waiver arguments nor arguments as to whether the trial court's e-mail constituted findings of fact and conclusions of law.

For a court to have subject matter jurisdiction, the party who brings the lawsuit must have standing. *Gomez*, 891 S.W.2d at 245. There must also be a live controversy between the parties and the case must be justiciable. *Id*. If any of these are absent, then the court lacks subject matter jurisdiction, and its decision would not be binding on the

Dupriest v. Nimitz Prop., LLC

parties. *Id.* If a decision would not be binding on the parties, then the decision amounts to an advisory opinion and is not permitted under Texas law. *Id.*; *see Texas Ass'n of Business*, 852 S.W.2d at 444 (citing Article II, Section 1, of the Texas Constitution).

In cases that involve a declaratory judgment, a justiciable controversy must exist as to the rights and status of the parties and the controversy must be one that will be resolved by the declaration. *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163-64 (Tex. 2004); *Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 681 (Tex. App.—Austin 2004, no pet.). To be justiciable, the controversy must be a real and substantial one that involves "a genuine conflict of tangible interests and not merely a theoretical dispute." *Save Our Springs*, 149 S.W.3d at 681. A declaratory judgment provides a way to determine the rights of the parties "when a controversy has arisen but before a wrong has been committed." *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011).

Ripeness is a justiciability doctrine that finds its origin in the prohibition against a court's issuing advisory opinions. *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998). A case is ripe when its resolution does not depend "on contingent or hypothetical facts or upon events that have not yet come to pass." *Id.* at 443.

When we consider the issue of ripeness, we focus on whether "the facts are sufficiently developed 'so that an injury has occurred *or is likely to occur*, rather than being contingent or remote.'" *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851–52 (quoting *Patterson*, 971 S.W.2d at 442) (emphasis added). Although the issue of standing focuses

Dupriest v. Nimitz Prop., LLC

on who may bring an action, ripeness is concerned with when an action may be brought. *Id.* at 851.

This case is ripe for decision by the trial court. The deed restriction contained in the deed to one of Nimitz's predecessors in title, as well as one of the Dupriests' predecessors in title, provided, among other things, that no stores could be erected on the properties. All the restrictions are common to both the Dupriests' chain of title and Nimitz's chain of title.

The court noted in *Ski Masters*, "[s]tanding essentially depends on two things: (1) the existence of a general plan or scheme of development (2) that was part of the inducement for purchasers to obtain land within the restricted area . . . ." *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 669 (Tex. App.—San Antonio 2008, no pet.). By reference to the deeds to McKee and to Lapham and to the plat of College Park, the Dupriests' pleadings contain allegations that show the existence of a general plan or scheme of development of the property as residential. "This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased." *Id.* (citing *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. Civ. App.—El Paso 1914, no writ).

There seems to be little question, if any, that Nimitz intends to build a store on its property. The property was originally zoned as residential. Nimitz filed a detailed application for a zoning change from the City of College Station that would allow for the

Dupriest v. Nimitz Prop., LLC

construction of a store on the Nimitz property; the City of College Station approved that zoning change request. The property is now zoned to accommodate a store.

By way of their action for declaratory judgment, the Dupriests asked the trial court to determine whether the deed restriction was valid and enforceable as to the property in College Park owned by Nimitz. The Dupriests did not seek to enforce the restriction. We hold that, as common owners of property in the platted College Park subdivision and whose chains of title contain the same deed restrictions appear, the Dupriests were more than members of the general public, and had standing to question the validity and enforceability of the common deed restriction.[1]

Further, we hold that a present controversy exists between the parties in this case in that an injury (the construction of the store) is likely to occur. *See Etan Industries, Inc.* 359 S.W.3d at 624; *see also Gibson* 22 S.W.3d at 851-52 ("the facts are sufficiently developed 'so that an injury has occurred, *or is likely to occur*, rather than being contingent or remote.'" (quoting *Patterson*, 971 S.W.2d at 442) (emphasis added). The controversy is ripe for determination by the trial court.

Nimitz also maintains that the deed restriction is personal to the original grantor and original grantee in the deeds that contained the restriction and that the restriction

---

[1] The case of *Bitgood v. Harkness*, No. 09-20-00263-CV, 2021 WL 2371252 (Tex. App.—Beaumont June 10, 2021, pet. denied) (mem. op.), has been called to our attention. That case is distinguishable. There, there was a hodge-podge of restrictions set out in various deeds. Further, some deeds contained no restrictions at all and others contained a mere reference to restrictions "if any." Also, it does not appear that the property in *Bitgood* was a part of any platted subdivision.

Dupriest v. Nimitz Prop., LLC

does not run appurtenant to the land. Therefore, according to Nimitz, subsequent owners are not bound by them. Nimitz also contends that the deed restriction does not provide that the heirs, successors or assigns of the "company" mentioned can enforce or waive the deed restriction. Nimitz takes the position that the result of the dissolution of the "company" named in the original deeds was that the deed restriction became unenforceable by anyone. Further, Nimitz takes the position that because the language of the deed restriction does not express a mutuality of intent, neither the Dupriests nor any other lot owner in College Park has standing to seek a declaratory judgment concerning whether the deed restriction is valid or enforceable against the Nimitz property.

Nimitz also raises defenses of waiver, acquiescence, abandonment, change in character of the neighborhood, laches, estoppel, quasi-estoppel, and failure to satisfy conditions precedent. These issue go directly to the merits of the case and do not involve the subject matter jurisdiction of the trial court. *See Wagoner v. Rainbow Group, LTD*, No. 03-03-00478-CV, 2004 WL 1685831, at *5 (Tex. App.—Austin July 29, 2004, pet. denied) (mem. op.). Any decision on those issues would be tantamount to a decision on the merits. A party is not required to prove that it will ultimately succeed in a lawsuit for it to have standing to pursue it. *Teal Trading & Development, LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 331 (Tex. 2020); *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 10 (Tex. 2011) ("It is not necessary to decide whether the voters' claims will,

Dupriest v. Nimitz Prop., LLC

ultimately, entitle them to relief, in order that they have standing to seek it."). The purpose of a plea to the jurisdiction, is, generally, to defeat an action "without regard to whether the claims asserted have merit." *Bland Ind. Sch. District v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

Because the Dupriests had standing, and because the controversy is ripe for determination, and because the trial court could resolve that controversy in a manner that would bind the parties, we hold that the trial court was not asked to deliver an advisory opinion and that it has subject matter jurisdiction in this case.

The Dupriests may or may not be able to succeed in a determination on the merits of their case, but they are entitled to try.

We reverse the ruling of the trial court and remand this case for consideration on its merits.

JIM R. WRIGHT
Senior Chief Justice

Before Chief Justice Gray,
 Justice Johnson,
 and Justice Wright [2]
 *(Justice Johnson concurring)
Reverse and remand
Opinion delivered and filed October 26, 2022
[CV06]

---

[2] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.
Dupriest v. Nimitz Prop., LLC